IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MEGAN BRITT                                                                           PLAINTIFF

V.                                                            CIVIL ACTION NO. 1:17CV219-NBB-DAS

MISSISSIPPI FARM BUREAU CASUALTY
INSURANCE COMPANY; SOUTHERN FARM
BUREAU LIFE INSURANCE COMPANY;
GEORGE "BUBBA" COLE; BARRY PATTON;
BRENDA WHEAT; AND TINA STAPP                                                DEFENDANTS

## ORDER DENYING MOTIONS TO DISMISS

This cause comes before the court upon the motions to dismiss filed by defendants Mississippi Farm Bureau Casualty Insurance Company, Southern Farm Bureau Life Insurance Company, and George "Bubba" Cole. Upon due consideration of the motions, responses, and applicable authority, the court is ready to rule.

The plaintiff alleges that she was an employee of Defendants Mississippi Farm Bureau Casualty Insurance Company ("MFB") and Southern Farm Bureau Life Insurance Company ("SFB Life") (collectively "Farm Bureau Defendants") working in the Columbus, Mississippi Farm Bureau office. She alleges that Defendants George "Bubba" Cole and Barry Patton, also employees of MFB and SFB Life, sexually harassed her by making inappropriate sexual comments to her, treated her differently than her male co-workers, denied her employment benefits, retaliated against her for reporting the defendants' conduct, covered up their conduct, and ultimately fired her and replaced her with a male employee.

The plaintiff filed the present action on September 28, 2017, and amended her complaint shortly thereafter. The defendants subsequently filed motions to dismiss, but the court later granted the plaintiff leave to amend her complaint a second time, which she did on July 22, 2018.

The Second Amended Complaint asserts a number of claims under Title VII, an alternative claim for the breach of the duty of good faith and fair dealing in the event the court finds the plaintiff to be an independent contractor and therefore not subject to Title VII protection, state law claims against the individual defendants Cole, Patton, Brenda Wheat, and Tina Stapp[1] for intentional interference with contract and business relationships and intentional infliction of emotional distress, a state law claim against MFB and SFB Life for wrongful termination and retaliation under *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603 (Miss. 1993), and finally a state law defamation claim against Defendant Cole individually for allegedly telling a now-dismissed defendant, Farm Bureau agent Roy Weathers,[2] that the plaintiff threatened Cole with a gun, was emotionally unstable, and was sleeping with Farm Bureau clients. Defendants MFB, SFB Life, and Cole subsequently filed motions to dismiss the Second Amended Complaint. As there is substantial overlap of the issues between the two motions of the Farm Bureau Defendants, the court will address MFB and SFB Life's motions jointly and then turn its attention to Cole's motion.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."

---

[1] Wheat and Stapp were office assistants in the Columbus Farm Bureau office.
[2] The plaintiff filed a stipulation of dismissal without prejudice of her claims against Weathers on April 17, 2018, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232-33 (5th Cir. 2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Id.*

In ruling on a motion to dismiss, the court generally may not look beyond the pleadings. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). Matters of public record and matters of which the court may take judicial notice as well as documents attached to the complaint are exceptions. *Id.* at 1343 n.6; *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Further, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2001).

The defendants assert that the plaintiff was an independent contractor and that she has made no plausible allegations that MFB and SFB Life were her employers. "[G]enerally only employers may be liable under Title VII." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). The plaintiff specifically alleges, however, that MFB and SFB Life intentionally misclassified her as an independent contractor to avoid liability.

Mississippi courts consider a number of factors to determine if a relationship is that of employer/employee or independent contractor, but "the right to control and actual control have always been primary factors." *McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994). "At last, and in any given case, it gets back to the original proposition whether in fact the contractor was actually independent." *Id.* (quoting *Richardson v. APAC—Mississippi, Inc.*, 631 So. 2d 143, 148 (Miss. 1994)). "Where the facts are undisputed, determining the type of relationship is a legal question." *McKee*, 39 F.3d at 96. Factors that may be considered are:

> Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he

3

furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees.

*McKee*, 39 F.3d at 97.

In support of her assertion that she was an employee of the Farm Bureau Defendants, the plaintiff alleges in her Second Amended Complaint:

> The Plaintiff is an employee of Farm Bureau, since Farm Bureau exercised control over her work activities. She was forced to work full time and overtime in the Farm Bureau office. She was closely supervised and monitored by Cole and Patton, who are both Farm Bureau employees. Cole provided her with potential customers to contact. Cole controlled the Plaintiff's book of business. She was required to pay into an agent's fund for purposes of marketing Farm Bureau products. She was required to attend mandatory meetings and conferences. She had to undergo quarterly reviews by her manager where she was evaluated on her sales performance, punctuality, appearance, community involvement, product knowledge, and attitude. She was given a Farm Bureau email address. Farm Bureau also provided the Plaintiff with office space, furniture, office supplies, internet, clerical assistance, computer and an IT department. She was also a captive agent, meaning she could only sell Farm Bureau products and work exclusively for Farm Bureau. Farm Bureau also prevented the Plaintiff from assigning any of her rights under her contract to third parties. Farm Bureau also controlled the amount of commission compensation that the Plaintiff would earn and when and how payments would be made.

The defendants direct the court to the plaintiff's contracts with MFB and SFB Life, which they assert establish the plaintiff's status as an independent contractor. The defendants set forth excerpts from the contracts showing that the plaintiff agreed to assume responsibility for withholding her own taxes, that she would not participate in benefits or programs only applicable to Farm Bureau employees, that she would not be subject to any employment rules, and that she had the right to control her daily activities and means by which she conducted her sale and servicing of insurance policies.

While the defendants contest the plaintiff's general assertion that she was an employee and direct the court to the applicable contract language, they do not contest the relevant underlying factual assertions from the Second Amended Complaint quoted above which the plaintiff uses to establish that Farm Bureau misclassified her as an independent contractor. The plaintiff's specific factual allegations, which are not conclusory as the defendants suggest, paint an entirely different picture of control and independence from that outlined in the contracts. The plaintiff addressed almost every factor suggested by *McKee* and then some, showing that Farm Bureau asserted considerable control over her. The court accepts these uncontested underlying factual assertions as true, as it must at this stage of the litigation, and finds that the plaintiff has sufficiently established her status as an employee, at least for the purposes of the present motions.

The defendants also argue that the plaintiff did not properly allege that SFB Life was her employer, that she has incorrectly and impermissibly lumped SFB Life with MFB, and that she failed to name SFB Life in her EEOC charge. The plaintiff responds that this argument is mere semantics, and the court agrees. The Second Amended Complaint makes clear that the plaintiff is accusing both MFB and SFB Life of the same wrongful conduct. She simply uses the term "Farm Bureau" to refer to both entities in the collective. It is true, however, that the plaintiff did not specifically name SFB Life as her employer in her EEOC charge.

Generally "a party not named in an EEOC charge may not be sued under Title VII." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). The court, however, should "liberally construe Title VII's naming requirement so as to not frustrate claimants

5

with needless procedural roadblocks." *Id.* If therefore the party "was within the foreseeable scope of the EEOC investigation, an unnamed party could be added as a defendant." *Henry v. Parkwest Staffing Servs., Inc.*, 2012 WL 950213, at *4 (S.D. Tex. Mar. 20, 2012) (citing *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1122 (5th Cir. 1981)).

"The general rule is that a party must be properly named in an EEOC charge to be sued under Title VII unless there is a clear identity of interest between it and the party named in the charge." *Way v. Mueller Brass Co.*, 840 F.2d 2d 303, 307 (5th Cir. 1988). The court uses two tests to determine whether this identity of interest exists. The first looks to whether the "unnamed party has been provided with adequate notice of the charge under circumstances which afford [it] an opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Steward v. Aries Freight Sys., L.P.* 2007 WL 3001660, at *4 (S.D. Tex. Oct. 12, 2007). The second test examines the "relationship between the named and unnamed parties at the time the charge is filed and conciliation efforts occur." *Id.* In examining this relationship, the court considers whether:

> (1) the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Jones v. Tubal—Cain Hydraulic Solutions, Inc.*, 2017 WL 1177995, at *3 (S.D. Tex. Mar. 30, 2017). Under either test, "[t]he 'identity of interest' exception acknowledges

6

the reality that laymen, unassisted by trained lawyers, initiate the process of filing a charge with the EEOC, and accordingly [the exception] prevents frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge." *Id.*

A review of the Second Amended Complaint reveals the following factual assertions regarding the identity of interest between MFB and SFB Life:

> Defendants Mississippi Farm Bureau Casualty Insurance Company and Southern Farm Bureau Life Insurance Company are an integrated enterprise and joint employer of the Plaintiff. Specifically, both Mississippi Farm Bureau Casualty Insurance Company and Southern Farm Bureau Life Insurance Company had the power to hire and fire the Plaintiff, to supervise the Plaintiff, and to set the Plaintiff's work schedule. Both Mississippi Farm Bureau Casualty Insurance Company and Southern Farm Bureau Life Insurance Company paid the Plaintiff's salary, withheld appropriate taxes, provided benefits, and set the terms and conditions of the Plaintiff's employment. In conjunction with each other, Mississippi Farm Bureau Casualty Insurance Company and Southern Farm Bureau Life Insurance Company had the right to control the Plaintiff's conduct. Both Mississippi Farm Bureau Casualty Insurance Company and Southern Farm Bureau Life Insurance Company have interrelated operations, centralized control of labor relations, common management, and common ownership and financial control.

The court finds that if these factual assertions are proven true, they will establish a clear identity of interest between MFB and SFB Life such that they are an integrated enterprise and the plaintiff's joint former employer. This fact is further established by SFB Life's representation to the plaintiff, in a letter from its executive Henry Hamill terminating the plaintiff's contracts, that SFB Life and MFB are a joint enterprise. This letter is written on MFB letterhead but refers to MFB and SFB Life jointly, and Hamill purports to speak on behalf of both entities collectively as "Vice President, Sales."

Given the facts alleged, it is also probable that SFB Life had actual notice of the plaintiff's EEOC charge so as to allow it to engage in conciliation proceedings had it so

desired. Further, if the allegations are proven true, the facts will establish that SFB Life was within the foreseeable scope of the EEOC investigation. The court therefore finds that the plaintiff has alleged sufficient facts to establish an identity of interest between MFB and SFB Life, and her failure to name SFB Life in her EEOC charge should be excused. In reaching this conclusion, the court notes that the plaintiff was a *pro se* claimant at the time she filed her EEOC charge and is therefore held to a more liberal standard in regard to that document than a litigant represented by counsel[3] and that SFB Life has failed to allege in its motion to dismiss or accompanying memorandum brief that it did not, in fact, have actual notice of the plaintiff's EEOC charge.

The defendants also argue that the plaintiff's EEOC charge as to her hostile work environment claim was untimely.[4] Regarding her gender discrimination and retaliation claims, the plaintiff is required to file her EEOC charge within 180 days of her termination. 42 U.S.C. § 2000e-5(e)(1). The plaintiff met this deadline. Her claim for hostile work environment is treated differently. Recognizing that by "[t]heir very nature," hostile work environment claims "involve[ ] repeated conduct," the Supreme Court has held that "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-117

---

[3] *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.").
[4] The defendants also argue that the plaintiff's disparity in pay claim is untimely and was not properly alleged in her EEOC charge. The plaintiff acknowledges, however, that she does not bring a separate claim for disparity in pay under the Equal Pay Act but that the alleged disparity in pay is simply evidence of gender discrimination and will go to show that she was treated differently than her male colleagues.

8

(2002). The plaintiff here alleges that actions contributing to her hostile work environment claim occurred in February 2017, within 180 days of the plaintiff's EEOC charges filed in April and May 2017. The charge for the plaintiff's hostile work environment claim was timely filed, and the claim will survive the defendants' motions to dismiss.

Next, the defendants contend that the plaintiff has failed to state a claim for wrongful termination and retaliation under *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603 (Miss. 1993). The plaintiff has alleged that Defendant Cole, an employee of the Farm Bureau Defendants, broke the law, specifically Miss. Code Ann. § 97-19-39, when he allegedly defrauded customers in an effort to earn commission payments through the sale of insurance products. The plaintiff has alleged that she refused to participate in these activities, that she reported Defendant Cole for his actions to Defendant Patton, and that she was terminated as a result. For purposes of 12(b)(6) review, the plaintiff has adequately stated a claim under *McArn*.

The Farm Bureau Defendants' remaining arguments merely assert that the plaintiff has failed to allege facts sufficient to state a claim for each of the claims in her Second Amended Complaint. These arguments are simply inaccurate, and the court finds no merit to them and no reason to engage in further analysis of them. Accepting, as it must, all factual assertions as true and drawing all reasonable inferences in favor of the plaintiff, the court finds that the Second Amended Complaint alleges, for each of the plaintiff's claims, facts sufficient to state a claim to relief that is plausible on its face.

The court now turns to Defendant Cole's motion to dismiss. Cole argues only that the court should dismiss without prejudice the plaintiff's claims against him for

intentional infliction of emotional distress, intentional interference with contract and business relationships, and defamation, as they are based solely on Mississippi law and substantially predominate over the federal law claims of the plaintiff against MFB and SFB Life. In other words, Cole asks the court to decline its exercise of supplemental jurisdiction granted by 28 U.S.C. § 1367(a).

The court disagrees with Cole's characterization of the state law claims as "substantially predominating" over the federal claims and finds that the state law claims are "so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The court also finds that the interests of justice and judicial economy will be best served by the court's retention of supplemental jurisdiction at this time.

For the foregoing reasons, the court finds that the motions to dismiss filed by defendants Mississippi Farm Bureau Casualty Insurance Company, Southern Farm Bureau Life Insurance Company, and George "Bubba" Cole should be, and the same are hereby, **DENIED**. The dispositive motions filed prior to the filing of the Second Amended Complaint will be denied as moot as well as any now moot motions for extensions of time to file responsive pleadings.

**SO ORDERED AND ADJUDGED** this 26th day of March, 2019.

/s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE